ELAINE T. BYSZEWSKI (SBN 222304)
CHRISTOPHER R. PITOUN (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152
*elaine@hbsslaw.com*
*christopherp@hbsslaw.com*

Anthony D. Shapiro

Jeniphr Breckenridge

**HAGENS BERMAN SOBOL SHAPIRO LLP**

1918 Eighth Avenue, Suite 3300

Seattle, WA  98101

Telephone: (206) 623-7292

Facsimile: (206) 623-0594

Email: steve@hbsslaw.com

tony@hbsslaw.com

Jeniphr@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

*(Additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KEVIN SMITH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br> v.<br><br>FLUIDMASTER, INC.,<br><br>        Defendant. | No.  8:15-cv-2173<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE ACTION ........................................................................ 1

II.   PARTIES ................................................................................................... 4

     A.    Plaintiff ........................................................................................ 4

     B.    Defendant ..................................................................................... 5

III.  JURISDICTION AND VENUE ................................................................ 6

IV.  SUBSTANTIVE ALLEGATIONS ........................................................... 6

     A.    Fluidmaster's Claims Regarding Product Quality ...................... 8

     B.    Fluidmaster's Water Supply Lines .............................................. 9

     C.    Fluidmaster's Warranty ............................................................. 12

     D.    Fluidmaster's NO-BURST Lines Are Defective ...................... 13

     E.    Plaintiff and the Class Suffered Damages ................................ 16

V.    CLASS ACTION ALLEGATIONS ....................................................... 19

VI.  FRAUDULENT CONCEALMENT ....................................................... 24

FIRST CAUSE OF ACTION  VIOLATION OF CALIFORNIA UNFAIR
     COMPETITION LAW (CAL BUS & PROF CODE § 17200 ET SEQ.) ON
     BEHALF OF THE CLASS, OR ALTERNATIVELY THE CALIFORNIA
     SUBCLASS ........................................................................................... 26

SECOND CAUSE OF ACTION  UNJUST ENRICHMENT ON BEHALF OF THE
     CLASS, OR ALTERNATIVELY THE CALIFORNIA SUBCLASS ............ 29

THIRD CAUSE OF ACTION  NEGLIGENCE ON BEHALF OF THE CLASS, OR
     ALTERNATIVELY THE CALIFORNIA SUBCLASS ................................. 30

FOURTH CAUSE OF ACTION  STRICT LIABILITY -- DESIGN DEFECT AND
     FAILURE TO WARN ON BEHALF OF THE CLASS, OR
     ALTERNATIVELY THE CALIFORNIA SUBCLASS ................................. 31

FIFTH CAUSE OF ACTION  NEGLIGENT FAILURE TO WARN ON BEHALF OF
     THE CLASS, OR ALTERNATIVELY THE CALIFORNIA SUBCLASS ... 33

SIXTH CAUSE OF ACTION  DECLARATORY JUDGMENT ACT, 28 U.S.C. §
     2201, *ET SEQ.* AND FED. R. CIV. P. 57 ON BEHALF OF THE CLASS .... 35

SEVENTH CAUSE OF ACTION  FRAUD BY CONCEALMENT ON BEHALF OF
     THE CLASS, OR ALTERNATIVELY THE CALIFORNIA SUBCLASS ... 36

EIGHTH CAUSE OF ACTION  COMMON LAW BREACH OF EXPRESS
WARRANTY ON BEHALF OF THE CLASS, OR ALTERNATIVELY THE
CALIFORNIA SUBCLASS ................................................................... 39

NINTH CAUSE OF ACTION  BREACH OF EXPRESS WARRANTY ON BEHALF
OF THE CLASS, OR ALTERNATIVELY THE CALIFORNIA SUBCLASS 42

TENTH CAUSE OF ACTION  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY ON BEHALF OF THE CLASS, OR
ALTERNATIVELY THE CALIFORNIA SUBCLASS ................................. 44

PRAYER FOR RELIEF ............................................................................ 46

JURY DEMAND ....................................................................................... 46

Plaintiff Kevin Smith ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Fluidmaster, Inc. ("Fluidmaster" or "Defendant"). In support thereof, Plaintiff alleges as follows based upon personal knowledge as to his own conduct and on information and belief as to the acts of others.

## I.     NATURE OF THE ACTION

1.     Defendant, Fluidmaster, which claims to be the world's leader in toilet and plumbing repair products, designed, manufactured, and marketed water supply lines ("water supply lines" or "supply lines") for use with common household fixtures including faucets, toilets, and dishwashers. These water supply lines contain certain latent defects that make them unfit for their intended purpose.

2.     Fluidmaster designed, manufactured, and distributed supply lines known as Fluidmaster NO-BURST® braided stainless steel supply lines (hereinafter, the "NO-BURST Lines" or the "NO-BURST water supply lines"). As evidenced by the name of its product, Fluidmaster pursued an aggressive branding and marketing strategy with respect to its NO-BURST water supply lines, stating that they are of high quality, built with superior materials, and only sold after rigorous testing. Specifically, Fluidmaster advertises its NO-BURST water supply lines as "tough," "heavy-duty," "reinforced," chlorine resistant, designed for "high flow capacity," and having "high bursting strength."

3.     Notwithstanding the name of the product, because of poor material

CLASS ACTION COMPLAINT
010418-11  839508 V1

selection and a defective design, Fluidmaster's NO-BURST Lines routinely rupture and burst. These NO-BURST water supply lines burst because Fluidmaster uses an inferior grade of stainless steel that is susceptible to corrosion from everyday household cleaners that are expected to be used and stored in close proximity to the water supply lines. Fluidmaster used inadequate low-pressure flexible rubber tubing that easily bursts if the stainless steel braiding intended to protect the tubing corrodes from ordinary exposure to water, air, and household products.

4.     Upon information and belief, in an attempt to correct the design defect alleged herein, Fluidmaster changed the design of its NO-BURST Lines in or around 2003 to include higher pressure-rated inner water-carrying tubing such that if the support from the exterior stainless steel braiding was lost, the supply line would not rupture, or would not rupture as easily. NO-BURST Lines using defective materials, however, are still being sold and installed in residential and commercial buildings across the country.

5.     The defects associated with Fluidmaster NO-BURST water supply lines are so severe that these water supply lines must be removed and discarded sooner than reasonably expected.

6.     Plaintiff and the Class have suffered damages including the loss of the benefit of the bargain, in that they paid for a product that was worth less than what was represented by Fluidmaster, and Plaintiff and the Class members would not have purchased the water supply lines, or continued to use the water supply lines, had they

- 2 -

known of the defects at the time of sale.

7.    Plaintiff and the Class have suffered harm as a result of Fluidmaster's actions because their water supply lines contained design defects that caused the water supply lines to rupture and burst, causing harm not only to the water supply lines, but also to other real and personal property. In addition, because of the flooding that actually has or will occur due to the defects described herein, there is a serious risk of harm in the event the flooding takes place in areas where electrical outlets, appliances, and related household items could cause electrocution to anyone who may come into contact with or near those items as water is an electrical conductor.

8.    Plaintiff seeks to recover, for himself and the Class, all costs associated with repairing, removing and/or replacing the water supply lines, as well as the costs of repairing any damage to property caused by the failure of the water supply lines to perform as represented and warranted.  Plaintiff also seeks injunctive relief requiring Fluidmaster to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law.

9.    The issues regarding the design defects associated with Fluidmaster's water supply lines are common to all members of the putative Class. There is an economy to class treatment of these issues because resolution has the potential to eliminate the need for repeated litigation related to the defects in Fluidmaster's water supply lines and the reasons for their repeated failure.

- 3 -

## II. PARTIES

**A.    Plaintiff**

10.    Plaintiff Kevin Smith is a citizen of the state of California who resides in Studio City, California.

11.    Mr. Smith had a NO-BURST Line installed in his home that was connected to a faucet in an upstairs bathroom.

12.    On July 11, 2014, Mr. Smith's daughter entered the home and discovered water flooding into a bathroom and hallway near the kitchen. She notified Mr. Smith, who, at the time, was eating dinner with his family in their backyard. Mr. Smith determined that the source of the water was the upstairs bathroom and, after turning off the water supply to the bathroom faucet, observed a hole in his NO-BURST Line.

13.    A picture of Mr. Smith's NO-BURST Line can be seen below:



14.    Mr. Smith retained a professional to assess the damage to his home from the flooding caused by the ruptured NO-BURST Line. He received a repair estimate

CLASS ACTION COMPLAINT
010418-11  839508 V1

for approximately $5,000 for work recommended by the professional, including opening the ceiling between the walls in order to ensure and verify that the water between the floors had properly dried and repairing holes and repainting. Mr. Smith opted to forego repairing certain damage to his home, and instead retained professionals to dry his home using fans, evaporators and heaters. Mr. Smith's out-of-pocket expenses were approximately $2,500.

15.     Mr. Smith telephoned Fluidmaster technical support and informed them of the failure of his NO-BURST Line. His call was then transferred to another employee that Mr. Smith understood handled claims. Mr. Smith reached her voicemail and her greeting indicated that she was in the risk department. Mr. Smith left a voicemail message, but his call was never returned by any Fluidmaster employee.

16.     Mr. Smith would have removed the NO-BURST Line from his home, and would not have exposed his real and personal property to flooding and himself and his family to safety risks, had Fluidmaster disclosed the propensity for the NO-BURST Line to spontaneously rupture and fail.

**B.     Defendant**

17.     Defendant Fluidmaster, Inc. ("Defendant" or "Fluidmaster") is a California corporation with its corporate headquarters and principal place of business located at 30800 Rancho Viejo Road, San Juan Capistrano, California 92675. Fluidmaster conducts substantial business in California and throughout the United

- 5 -

States, including the sale and distribution of its water supply lines, which can be purchased at stores such as Home Depot, Lowe's, Menards, TrueValue, Walmart, and Ace Hardware.

## III. JURISDICTION AND VENUE

18. This Court has jurisdiction over this class action pursuant to 28 U.S.C. §1332(d), as the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the proposed Class is a citizen of a state different from Fluidmaster.

19. The requirement of minimal diversity is met as the dispute is between citizens of different states within the meaning of 28 U.S.C. §§ 1332(d).

20. Plaintiff Smith is a citizen of California, and Defendant Fluidmaster is a citizen of California.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, *et seq*. because a substantial part of the events or omissions giving rise to the claim occurred in this District. Additionally, Defendant Fluidmaster regularly conducts substantial business in California, including the sale and distribution of its water supply lines.

## IV. SUBSTANTIVE ALLEGATIONS

22. Fluidmaster, from its California headquarters, conducts business throughout the United States, and designed, manufactured, assembled, tested, labeled, marketed, advertised, and offered for distribution and sale defective water supply lines with the specific purpose that they be installed by builders, plumbers and consumers in

- 6 -

homes and other buildings throughout the United States. The water supply lines were designed and introduced as a safe and superior alternative to rigid metal pipes with shutoff valves. The water supply lines were lauded as a safe product, of merchantable quality, and fit for their intended and reasonably foreseeable uses.

23.     Water supply lines are used to transport water from a supply pipe to a plumbing fixture (*e.g.*, a toilet, faucet, dishwasher, *etc.*). The lines primarily consist of three parts: the inner flexible tubing, the outer braided steel wire designed to protect the tubing, and the coupling nuts that connect the lines to adjacent plumbing fixtures. Because they can be installed in tight spaces, water supply lines have found widespread application in residential and commercial plumbing.

24.     Fluidmaster, however, knowingly failed to disclose that its water supply lines were subject to a serious design defect, were unsafe, and posed a substantial risk of failure, in that they would burst, resulting in flooding and damaging building owners' real and personal property. Even after their water supply lines began failing, Fluidmaster failed to notify consumers of the defects.

25.     In recent years, losses due to water leaks, flooding, and mold damage caused by faulty and defective supply lines have risen. Because the water being transported is under pressure, deterioration of the stainless steel braiding due to corrosion can cause the supply lines to become brittle and burst, even under normal pressure conditions and absent any faulty installation and/or misuse by the consumer.

CLASS ACTION COMPLAINT
010418-11  839508 V1

**A.** **Fluidmaster's Claims Regarding Product Quality**

26. On Fluidmaster's website, visitors find a picture of the Company's founder, Adolf Schoepe, who the website claims changed the plumbing industry in 1957 when he invented the Fluidmaster toilet fill valve.[1] Visitors also find a number of claims regarding the allegedly high-quality materials that Fluidmaster products are made from and the allegedly long, useful, lifespan customers can expect from them:

> Why do Fluidmaster parts last so long? Superior engineering and top-grade materials. We keep that spirit of invention alive by always looking (and finding) new ways to make our repair parts work better and last longer.

http://www.fluidmaster.com/history

27. Fluidmaster describes how its toilet valves (the Company's flagship product) are subjected to rigorous testing, including tests meant to simulate exposure to water with extreme pH or chlorine levels:

> Fluidmaster's team of engineers oversees a rigorous product testing program, exposing valves to conditions that greatly exceed typical household circumstances. Up to 20 valves cycle 24-hours a day in the Engineering Lab, sometimes flushing water that is altered to simulate the extreme pH or chlorine levels that exist in other regions. To maintain a competitive stance, Fluidmaster also regularly tests valves from other manufacturers, using the same demanding protocol.

http://fluidmasterpro.com/history

28. Fluidmaster describes how "[t]he popularity of [its] valves has created a perfect springboard for Fluidmaster's expansion into related product lines," such as

_____

[1] http://www.fluidmaster.com/history

- 8 -

braided stainless steel connectors/supply lines, explaining in detail:

> In addition to the inaugural fill valve, Fluidmaster's complete line of toilet repair parts includes flush valves, flappers, tank levers, dual flush valves, bowl wax, toilet repair kits, ballcocks and connectors. Fluidmaster's growing global distribution network reaches more than 80% of the world's population and spans over 87 countries. With manufacturing facilities across the globe, Fluidmaster is quick to market, quick to manufacture and *quick to deliver with unparalleled quality assurance*.

(Emphasis added).[2]

29.     To reassure consumers of the outstanding quality of their products, Fluidmaster's marketing materials emphasize their vast market share, which has resulted from providing the "highest quality" products:

> Fluidmaster is the #1 selling brand of toilet repair products in the world. In fact, our products are found in more toilets than all other brands combined. For more than 50 years, Fluidmaster has been at the forefront of the toilet care market by providing innovative yet easy-to-use products that are of the highest quality.

30.     Fluidmaster's marketing is clear and unambiguous -- consumers can depend on the Company's products, including its water supply lines, because they are "of the highest quality," they are made of superior materials, and their products are rigorously tested before finding their way into homes across the world.

## B.     Fluidmaster's Water Supply Lines

31.     Fluidmaster manufactures numerous water supply lines that are the

---

[2] http://fluidmasterpro.com/history/

- 9 -

subject of this lawsuit, including a line of braided stainless steel supply lines under the registered trademark "NO-BURST."

32.    Fluidmaster began using the "NO-BURST" designation in the 1980s and registered the trademark in 1989.

33.    Fluidmaster's NO-BURST Lines typically retail for between $2.00 to $20.00, depending on the length of the line and the type of fixture.  The specific line of products that are the subject of this lawsuit is set forth below:

| Name | Lengths Available |
|------|-------------------|
| NO-BURST® Braided Stainless Steel Fluidmaster Supply and Toilet Supply Lines | 6", 9", 12", 16" and 20" |
| NO-BURST® Braided Stainless Steel Fluidmaster Supply Lines (with re-enforced vinyl) | 6", 9", 12", 16" and 20" |
| NO-BURST® Braided Stainless Steel Faucet Connectors | 9", 12", 16", 20", 30" and 36" |
| NO-BURST® Braided Stainless Steel Dishwasher Connectors | 48" |
| NO-BURST® Braided Stainless Steel Ice Maker Connectors | 12", 60", 72" 84", 96", and 120" |
| NO-BURST® Braided Stainless Steel Washing Machine Connectors | 48", 60" and 72" |

- 10 -

| Name | Lengths Available |
|------|-------------------|
| NO-BURST® Braided Stainless Steel Water Heater Connectors | 12", 18" and 24" |



34.     Fluidmaster's NO-BURST Lines are easily identifiable, as the Company's name and the part number are stamped or etched onto the crimp sleeve located at the end of the line.   For example, a line might be stamped "#FLUIDMASTER USA W222#."

35.     Fluidmaster advertises its NO-BURST Lines as "tough," "heavy-duty," "NSF-approved," "reinforced," chlorine resistant, designed for "high flow capacity," and having "high bursting strength."

36.     For example, Fluidmaster's NO-BURST Lines are described as follows on its website:

- 11 -

NO-BURST®
Braided Stainless Steel Fluidmaster Supply Lines

High bursting strength. Each foot of No-BURST® connectors contains 220 feet of stainless steel wire. Stainless ferrules are extra-long with double radial crimps for more security. Tough, NSF-approved, re-enforced polymer core resists chlorine and chloramines. Ample inside diameter for high flow capacity. Captive cone washes seal tightly.

Exceptional flexibility for fast, easy installation. Won't kink or crease, even in the tightest of spaces. Heavy-duty brass nuts are durable and easy to grip.

Exceeds all requirements for flexible water connectors.

37. On its website, Fluidmaster also provides a series of "Appliance Maintenance Tips." Fluidmaster instructs consumers to inspect water supply connectors annually and "[r]eplace if bulging or unable to straighten out any kinks." For best results, consumers are told to "replace with a braided, flexible stainless steel connector such as NO-BURST®."

38. Fluidmaster does not instruct its customers to inspect their NO-BURST Lines for signs of corrosion or warn them of the water supply lines' susceptibility to corrosion, rupture and bursting.

C. **Fluidmaster's Warranty**

39. Fluidmaster provides a five-year -- or, in some cases, depending on the date of manufacture, a ten-year -- limited express warranty on each of its water supply

- 12 -

lines.[3]  Pursuant to the standard warranty, Fluidmaster promises to repair or replace

"any part which proves to be defective in workmanship or materials" under normal use

for five (5) years from the date of purchase.

40.     The warranty is made subject to the following "Exclusions":

> FLUIDMASTER SHALL NOT BE LIABLE FOR
> INCIDENTAL OR CONSEQUENTIAL DAMAGES,
> INCLUDING COSTS OF INSTALLATION, WATER
> DAMAGE, PERSONAL INJURY OR FOR ANY
> DAMAGES RESULTING FROM ABUSE OR MISUSE
> OF THE PRODUCT, FROM OVERTIGHTENING OR
> FROM FAILURE TO INSTALL OR MAINTAIN THIS
> PLUMBING PRODUCT IN ACCORDANCE WITH THE
> WRITTEN INSTRUCTIONS.  DO NOT USE IN-TANK
> DROP-IN TOILET BOWL CLEANERS CONTAINING
> BLEACH OR CHLORINE.  USE OF SUCH PRODUCTS
> WILL RESULT IN DAMAGE TO TANK COMPONENTS
> AND MAY CAUSE FLOODING AND PROPERTY
> DAMAGE.  USE OF SUCH PRODUCTS WILL VOID
> THIS WARRANTY.

**D.     Fluidmaster's NO-BURST Lines Are Defective**

41.     At all times relevant to this Complaint, and prior to Plaintiff's and the

Class members' purchases of their NO-BURST water supply lines, Fluidmaster was

aware that the supply lines contained an inherent design defect that caused them to

burst, rupture, leak, and fail, and that the defect was present at the point of sale.

42.     Fluidmaster knew, or but for its reckless indifference should have known,

that it was receiving and was going to continue to receive reports of burst and broken

NO-BURST Lines.

---

[3]  http://www.fluidmaster.com/warranty

CLASS ACTION COMPLAINT
010418-11  839508 V1

43.     Despite its knowledge, Fluidmaster did not disclose to its customers or prospective purchasers that there was a substantial risk that its NO-BURST Lines would manifest the defect (rupture and bursting of the inner tubing on the lines after corrosion of the stainless steel braiding).

44.     Consumers who purchased the NO-BURST water supply lines had no way of knowing that the lines were defective at the point of sale.

45.     Fluidmaster's NO-BURST Lines are defective because they do exactly what they are not supposed to do: they burst.  The defect is a design flaw stemming from Fluidmaster's use of substandard materials.

46.     Specifically, Fluidmaster uses a grade of stainless steel that is known to corrode and fracture in the presence of low levels of bleach or chlorine, chemicals that are present in common household cleaners that are reasonably and foreseeably used and stored near NO-BURST Lines.

47.     Additionally, Fluidmaster used a low pressure-rated water-carrying inner tubing that herniates and ruptures if support from the exterior stainless steel braiding is lost.

48.     NO-BURST Lines using defective materials, however, are still being sold and installed in residential and commercial buildings across the country.

49.     Although a layperson might believe that stainless steel cannot corrode, this is inaccurate.  When stainless steel is exposed to oxygen, a microscopic layer of corrosion forms almost immediately over its entire surface, sealing the steel from

- 14 -

further oxidation and stopping further corrosion. If stainless steel is scratched or scraped, the protective layer is lost, but will reform again to "heal" the exposed area.

50.     The braided stainless steel covering a supply line pulsates and moves with changes in water pressure and as a result of a phenomenon known as water hammer, which occurs when flowing water is forced to stop or change direction suddenly, as when a valve is closed at the end of a pipeline system, causing a knocking sound. This movement causes the braid's wires to rub against one another, and the protective coating of corrosion on the surface of the stainless steel is lost and reformed over and over again.

51.     Unlike solid rubber or copper tubing, the braided nature of the surface stainless steel supply lines allows them to capture water. The water and any chemical it contains seeps through the braid and is trapped between the braid and the inner flexible tubing. If the water contains chlorides found in common household cleaners, the corrosion that happens as the braid moves is accelerated. This process, which will eventually cause the braiding to fail and the line to burst, is known as chloride stress corrosion.

52.     Under normal and foreseeable conditions, the outer stainless steel shell of Fluidmaster's NO-BURST Lines deteriorates, making it thin and brittle, causing the braiding to separate, exposing the inner flexible tubing, and causing it to lose strength.

53.     When this happens, normal water pressure allows the low-pressure tubing to herniate until it ruptures, resulting in an uncontrolled release of water. Pictures of

- 15 -

ruptured lines are set forth below:

 

54.     Chloride stress corrosion is a well-known and generally accepted phenomenon by the scientific community and in the plumbing industry.  Fluidmaster knew or was reckless in not knowing that by selecting an inferior grade of stainless steel, combined with low-pressure inner rubber tubing, it was creating a product designed to fail.  These defects were present at the time of manufacture and point of sale to Plaintiff and the Class, who did not have knowledge of the defects.

55.     Upon information and belief, in an attempt to correct the design defect alleged herein, in or around 2003 Fluidmaster changed the design of its NO-BURST Lines to incorporate inner tubing with a higher pressure rating.  Upon information and belief, Fluidmaster strengthened the water-carrying inner tubing to reduce or delay the bursting of the tubing should the exterior stainless steel braiding support be lost to corrosion.

**E.     Plaintiff and the Class Suffered Damages**

56.     Plaintiff and the Class have suffered harm as a result of Fluidmaster's

- 16 -

actions because their water supply lines contained material design defects which caused the water supply lines to rupture and burst, causing harm not only to the water supply lines, but also to other real and personal property. In addition, because of the flooding that actually has occurred or will occur due to the defects described herein, there is a serious risk of harm in the event the flooding takes place in areas where electrical outlets, appliances, and related household items could cause electrocution to anyone who may come into contact with or near those items as water is an electrical conductor.

57.     Plaintiff and the Class had a reasonable expectation that the service life of the water supply lines was at least 15 years (in fact, a competitor named Floodchek has a 20-year warranty on water supply lines such as the ones sold by Fluidmaster in this case),[4] which would equate to the same useful life as the plumbing component (*e.g.*, toilet) to which it was affixed.

58.     The water supply lines' design defects, however, caused Plaintiff's and the Class members' water supply lines to experience premature failure that is disproportionate to the age of the component or to the age of the plumbing fixture (*e.g.*, toilet, faucet, etc.).

59.     The injuries sustained by Plaintiff and the Class flow directly from the core common facts surrounding Fluidmaster's misconduct, including, without limitation: (a) that the water supply lines suffered from design defects which were

---

[4] http://www.floodchek.com/resources/braided-wire-washer-hose.html

- 17 -

known to Fluidmaster that led the lines to rupture and burst; (b) that the water supply lines were defective for their intended use at the time of sale; (c) that Fluidmaster did not provide adequate warnings concerning the defective nature of the water supply lines; and (d) that Fluidmaster, despite knowing of the design defects, failed to provide any public notice or warning, or institute a recall to repair or replace the defective water supply lines.

60.   Plaintiff's and Class members' damages include, without limitation: (a) amounts paid for the defective water supply lines; (b) amounts paid to remediate real and personal property damage caused by flooding after the failure of a Fluidmaster supply line; (c) amounts paid to replace the defective water supply lines; and (d) expenses incurred on incidental and consequential damages.   Plaintiff and the Class also lost the benefit of the bargain with respect to their purchase of the water supply lines in that they would not have purchased them if they had known of the defects that existed at the point of sale, or they would not have paid the price they paid, wrongly believing that the water supply lines were not defective. In addition, there is a serious risk of harm to Plaintiff or members of the Class if they come into contact with any electrical outlet, appliance or related item, as water flooding from the defective lines is a conductor of electricity.

61.   Plaintiff, through online and related research, has found that many complaints concerning the problems and defects outlined herein have occurred across the country, and in fact numerous insurance companies have filed suit against

- 18 -

Fluidmaster for their defective water supply lines in order to recover monies paid by the insurance companies to various homeowners for flooding and related property damage.

## V.    CLASS ACTION ALLEGATIONS

62.    This action is brought and is properly maintained as a nationwide class action pursuant to Fed. R. Civ. P. 23 on behalf of a class defined as follows:

> All individuals and entities that own or have owned a Fluidmaster NO-BURST Line; or who own or have owned homes or other structures physically located in the United States, in which a Fluidmaster NO-BURST Line is or was installed (the "Nationwide Class").  Excluded from the Class is Fluidmaster, any entity in which Fluidmaster has a controlling interest, and Fluidmaster's legal representatives, assigns, and successors.

63.    Alternatively, or in addition to the Nationwide Class claims, Plaintiff brings these claims under Fed. R. Civ. P. 23 on behalf of himself and on behalf of a subclass of individuals and entities residing in California ("California Subclass").  The California Subclass is defined as:

> All individuals and entities in California that own or have owned Fluidmaster a NO-BURST Line; or who own or have owned homes or other structures physically located in California, in which a Fluidmaster NO-BURST Line is or was installed.  Excluded from the California Subclass is Fluidmaster, any entity in which Fluidmaster has a controlling interest, and Fluidmaster's legal representatives, assigns, and successors.

64.    The Nationwide Class and the California Subclass are collectively referred to herein as the "Class."

65.    Plaintiff reserve the right to redefine the Nationwide Class and/or the

- 19 -

California Subclass prior to the certification of the Nationwide Class and/or the California Subclass.

66. The Class is so numerous that individual joinder of all Class members is impracticable. The actual number of Class members is unknown at this time, but numbers in the thousands. The true number of Class members is likely to be known by Fluidmaster and may be ascertained through its books and records, and through discovery of its retailers and distributors.

67. There are numerous questions of law and fact that are common to Plaintiff and the Class and that predominate over any questions that may affect individual Class members, including, without limitation:

a. Whether Fluidmaster's water supply lines are defective;

b. Whether Fluidmaster's water supply lines suffer from common design defects, as alleged herein;

c. Whether the design defects with respect to Fluidmaster's water supply lines result in the water supply lines being prone to rupture, burst, break, and resulting in failure to perform the task for which they were designed;

d. Whether Fluidmaster knew or should have known of the defects in the water supply lines prior to putting them into the stream of commerce for purchase by Plaintiff and the Class;

e. Whether Fluidmaster properly advised consumers about the likelihood of the water supply lines' premature failure;

- 20 -

f.      Whether Fluidmaster owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting, and marketing of the water supply lines;

g.      Whether Fluidmaster breached its duty to Plaintiff and the Class by designing, manufacturing, advertising, and selling to Plaintiff and the Class defective water supply lines;

h.       Whether Fluidmaster breached its duty to Plaintiff and the Class by failing promptly to remove the defective water supply lines from the marketplace or take other remedial action;

i.      Whether the water supply lines fail to perform in accordance with the reasonable expectations of ordinary consumers;

j.      Whether the water supply lines fail to perform as advertised, marketed and warranted;

k.      Whether Fluidmaster breached its express warranties to Plaintiff and the Class by advertising, marketing and selling defective water supply lines to Plaintiff and the Class;

l.      Whether Fluidmaster breached its implied warranties to Plaintiff and the Class by advertising, marketing and selling water supply lines that were not of a merchantable quality, nor fit for the ordinary purpose for which they were sold;

m.      Whether Plaintiff and the Class members did not receive the benefit of their bargain in purchasing the water supply lines;

- 21 -

n. Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages for the replacement and remediation of the water supply lines;

o. Whether Fluidmaster's representations regarding the suitability and exemplary nature of its water supply lines, and its omissions and concealment of facts to the contrary regarding the water supply lines' design defects constitute violations of state consumer protection laws;

p. Whether Fluidmaster continued to market and sell the defective water supply lines under the name "NO-BURST" when the manufacturer knew that the supply lines would spontaneously burst or break, causing damage to the property of consumers;

q. Whether Fluidmaster has been unjustly enriched by its conduct, as alleged herein;

r. Whether Fluidmaster should be required to notify all Class members about their defective water supply lines;

s. Whether Plaintiff and members of the Class are entitled to damages.

68. Plaintiff has the same interests in this matter as all Class members, and his claims are typical of all Class members. As a result of the uniform design defects inherent in the water supply lines' formulation, the water supply lines have failed and will continue to prematurely fail, causing Plaintiff and Class members to suffer

- 22 -

damages in the form of unreimbursed costs associated with replacing the water supply lines and remediating flood damage.

69.     Plaintiff will fairly and adequately represent the interests of the Class members and does not have interests adverse to the Class.  Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.

70.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of non-party Class members.

71.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.  The members of the Class are entitled to injunctive relief as set forth below.

72.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because, as set forth above, questions of law and fact common to the Class

CLASS ACTION COMPLAINT
010418-11  839508 V1

predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Furthermore, the likelihood that individual members of the Class will prosecute separate actions is remote given the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of damages at issue for each individual Class member. This action will be prosecuted in a manner to ensure the Court's able management of this case as a class action, and Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VI.    FRAUDULENT CONCEALMENT

73.    At all relevant times, Fluidmaster affirmatively concealed from Plaintiff and the Class the design defects inherent in the water supply lines.

74.    Fluidmaster had a duty to inform Plaintiff and the Class of the defects, about which Fluidmaster knew or should have known. Specifically, Fluidmaster has known for years of the problems and defects outlined herein through various complaint forums and as the result of numerous suits being filed against Fluidmaster by various insurance companies. Notwithstanding their duty to inform Plaintiff and Class members, Fluidmaster has never disclosed the defects to Plaintiff and the Class. To the contrary, Fluidmaster has consistently maintained that its water supply lines are "NO-BURST," "tough," "heavy-duty," "NSF-approved," "reinforced," chlorine

resistant, designed for "high flow capacity" and having "high bursting strength."

75. Plaintiff and the Class could not have discovered the defects or Fluidmaster's attempts to avoid disclosure of the defects alleged herein. Thus, the running of the applicable statutes of limitation have been tolled with respect to any claims that Plaintiff or the Class members have brought or could have brought as a result of the unlawful or fraudulent course of conduct described herein.

76. In addition, Fluidmaster is estopped to plead the statute of limitations because it failed to disclose facts that it was obligated to disclose concerning the defects in the water supply lines. Fluidmaster actively concealed and misrepresented to Plaintiff and the Class members facts that were essential to understanding that Plaintiff and the Class members had claims against Fluidmaster, and Fluidmaster thus acted to prevent Plaintiff and the Class members from learning that they possessed claims against Defendant. Had Plaintiff and the Class members been aware of the facts that Fluidmaster misrepresented and concealed, they would have commenced suit against Fluidmaster before the running of any statute of limitations alleged to be applicable to this case.

77. Fluidmaster is further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its fraudulent concealment.

- 25 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
(CAL BUS & PROF CODE § 17200 ET SEQ.)
ON BEHALF OF THE CLASS, OR ALTERNATIVELY
THE CALIFORNIA SUBCLASS**

78.    Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

79.    Plaintiff brings this claim under the laws of California, because Fluidmaster's operations are headquartered in California and California has the most significant relationship to the issues and facts relevant to this claim, including being the locus of Fluidmaster's decisions concerning the design and marketing of the water supply lines.  In the alternative, Plaintiff brings this claim on behalf of the California Subclass.

80.    Plaintiff brings this cause of action on behalf of himself, and on behalf of the other Class members, against Fluidmaster for its unlawful, unfair, and/or deceptive business acts and practices pursuant to California's Unfair Competition Law (UCL), Business & Professions Code § 17200 et seq., which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

81.    This claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices. Plaintiff and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

82.    The UCL prohibits acts of "unfair competition." As used in this section,

CLASS ACTION COMPLAINT
010418-11  839508 V1

"unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices"; (b) "unfair fraudulent business acts or practices"; and (c) "unfair, deceptive or misleading advertising."

83.     Defendant committed an unfair business act or practice in violation of the UCL because Fluidmaster knew that its water supply lines contained defects and that the instructions provided for installation and use were inadequate, contradictory, and confusing.  It further knew that Plaintiff and the Class members could not learn or discover that the water supply lines were defective until the water supply lines failed.  Fluidmaster surreptitiously remediated the defects without warning consumers about the potential for them to spontaneously fail and cause extensive property damage due to flooding.  Fluidmaster's superior knowledge of the defects and the active concealment created a legal duty to disclose them.

84.     As alleged in this complaint, Fluidmaster failed to disclose that the NO-BURST water supply lines are defectively designed and produced using a grade of stainless steel, which is known to corrode and fracture, and that the NO-BURST water supply lines are substantially certain to fail when used for their intended purpose due to Fluidmaster's choice of materials. The stainless steel braiding has an unreasonably high likelihood of corroding and failing when subjected to common household chemicals that are reasonably and foreseeably used and stored near the water supply lines.

85.     Also as alleged in this complaint, Fluidmaster failed to disclose that the

- 27 -

design of the Fluidmaster NO-BURST water supply lines include low pressure inner tubing which is substantially certain to fail when used for its intended purpose due to Fluidmaster's choice of materials. This inner tubing has an unreasonably high likelihood of bursting when the stainless steel braiding covering the tubing fails.

86. Because the injuries alleged occurred without Plaintiff's and the other Class members' knowledge, Plaintiff and the Class members could not have avoided such injuries. One cannot avoid something about which one is unaware. Accordingly, Fluidmaster has violated the "unfairness" prong of the UCL.

87. Plaintiff would not have purchased the Fluidmaster water supply lines, had them installed, or otherwise exposed his real and personal property to catastrophic flooding, had Fluidmaster disclosed the propensity for its water supply lines to spontaneously fail or that remediated supply lines were available to replace the defective ones.

88. As a result of Fluidmaster's violation of the UCL, Plaintiff and the Class members have suffered injury-in-fact and lost money or property in the amounts paid for the water supply lines; amounts paid to remediate property damage stemming from the defective water supply lines; and amounts paid to replace the defective water supply lines.

89. Plaintiff, on behalf of himself and for all other similarly situated persons, demands judgment against Fluidmaster and demand declaratory, equitable, and/or injunctive relief requiring Fluidmaster to stop their unlawful, deceptive, and unfair

- 28 -

conduct, prohibiting Fluidmaster from continuing to sell the defective water supply lines; requiring notice to the public at-large of the design defects associated with these water supply lines and of the availability of a remediated product, and all other relief the Court deems just and equitable.

## SECOND CAUSE OF ACTION

### UNJUST ENRICHMENT
### ON BEHALF OF THE CLASS, OR ALTERNATIVELY
### THE CALIFORNIA SUBCLASS

90.     Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein and assert this claim in the alternative to any warranty claims brought on behalf of the Class or California Subclass.

91.     Plaintiff and the Class conferred substantial benefits on Fluidmaster by purchasing the defective water supply lines.  Fluidmaster knowingly and willingly accepted and enjoyed those benefits.

92.     Fluidmaster knew or should have known that Plaintiff and the Class paid for the water supply lines with the expectation that they would perform as represented.

93.     Fluidmaster's retention of these benefits is inequitable.

94.     Plaintiff and the Class are entitled to recover from Fluidmaster all amounts wrongfully collected and improperly retained by Fluidmaster, plus interest.

95.     As a direct and proximate cause of Fluidmaster's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs, and interest.

CLASS ACTION COMPLAINT
010418-11  839508 V1

### THIRD CAUSE OF ACTION

**NEGLIGENCE**
**ON BEHALF OF THE CLASS, OR ALTERNATIVELY**
**THE CALIFORNIA SUBCLASS**

96.     Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

97.     Fluidmaster was negligent in that it failed to use reasonable care when it designed, created, manufactured, assembled, labeled, tested, distributed and sold its water supply lines.

98.     As the manufacturer and/or seller of a consumer product, Fluidmaster owed a duty to Plaintiff and the Class to provide safe and quality products, and a duty to provide products that would perform as intended and expected.  Fluidmaster also owed a duty to Plaintiff and the Class to provide adequate instructions and warnings for proper and safe use of the products.  Fluidmaster further owed a duty to provide Plaintiff and the Class with information related to the water supply lines' reasonable expected life span and information related to their maintenance and replacement. Fluidmaster owed a duty to disclose the defects that it knew existed, yet failed to do so to the detriment of the Class.

99.     Fluidmaster breached each of these duties.

100.   As a direct and proximate result of Fluidmaster's negligence, lack of care and other wrongful acts, Plaintiff and the Class members have incurred damages in an amount to be determined at trial.

101.   As a result of Fluidmaster's negligence, Plaintiff and Class members have suffered economic losses for the damages for inadequate value, cost of repair and replacement of their defective water supply lines, as well as damage to other personal property which resulted from the sudden and dangerous failure of the water supply lines.

102.   The Plaintiff's and Class members' damages were proximately caused by Fluidmaster's false representations regarding the water supply lines' durability, even after Fluidmaster knew that the defects were causing the water supply lines to burst and/or break.

103.   The damages suffered by the Plaintiff and Class members were proximately caused by a negligent misrepresentation made by Fluidmaster, a corporation which is in the business of supplying information for the guidance of consumers and actively holds itself out to be "the #1 selling brand of toilet repair products in the world. . . [and] at the forefront of the toilet care market by providing innovative, yet easy-to-use products that are of the highest quality."

## FOURTH CAUSE OF ACTION

### STRICT LIABILITY -- DESIGN DEFECT AND FAILURE TO WARN ON BEHALF OF THE CLASS, OR ALTERNATIVELY THE CALIFORNIA SUBCLASS

104.   Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

105.   Fluidmaster designed, manufactured, sold, and/or distributed defective

water supply lines to Plaintiff and the Class.

106.  The water supply lines that Fluidmaster designed, manufactured, sold and/or distributed were defective in their design, and were defective when they left Fluidmaster's control.

107.  Fluidmaster knew, or should have known, that the water supply lines contained a non-obvious danger in their material composition.  Fluidmaster knew that the water supply lines were highly susceptible to failure under expected installation conditions, and that consumers would not repeatedly replace their water supply lines without an instruction to do so.

108.  Fluidmaster knew that Plaintiff and the Class would use the water supply lines without first inspecting their durability.  Fluidmaster failed to inform Plaintiff and the Class as to the water supply lines' susceptibility to sudden catastrophic failure. Fluidmaster failed to warn consumers that it was necessary to periodically inspect and replace the water supply lines, even if the lines had not yet failed or even if the lines were still within the warranty period measured after the consumer's date of purchase of the water supply line.

109.  The water supply lines were defective due to inadequate warnings and inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing and safety inspections, or lack thereof.

110.  Had Plaintiff and the Class been adequately warned concerning the likelihood that the water supply lines would fail, they would have taken steps to avoid

- 32 -

damages by replacing the water supply lines or by not purchasing them.

111.   Fluidmaster, after learning that its NO-BURST water supply lines could suddenly burst, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of its water supply lines, even when used for their intended purpose.

112.   As a direct and proximate result of the defective condition of the water supply lines, Plaintiff and the Class members have incurred damages to both their supply lines and to their adjacent personal and real property in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### NEGLIGENT FAILURE TO WARN
### ON BEHALF OF THE CLASS, OR ALTERNATIVELY
### THE CALIFORNIA SUBCLASS

113.   Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

114.   Fluidmaster manufactured, designed, sold and/or distributed defective water supply lines to Plaintiff and the Class that were defective from the time that the water supply lines were manufactured.

115.   Fluidmaster knew or reasonably should have known that its water supply lines were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable and expected manner.

116.   Fluidmaster knew or reasonably should have known that Plaintiff and the

Class would not realize that their water supply lines were defective and posed a danger of causing substantial property damage, both to the product itself and the adjacent real and personal property of Plaintiff and the Class.

117.  Fluidmaster failed to adequately warn of the danger or instruct Plaintiff and the Class on the safe use of the water supply lines, and further, failed to warn Plaintiff and the Class of the risks associated with signs of corrosion of the braided steel or minute fractures of the coupling nut.

118.  A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of the dangers or instructed on the safe use of the product, including, without limitation, by providing detailed installation and maintenance instructions together with warnings to periodically inspect and/or replace the water supply lines.

119.  As a direct and proximate result of the defective condition of the water supply lines Plaintiff and the Class members have incurred damages in an amount to be determined at trial.

120.  Fluidmaster, after learning that its water supply lines could suddenly burst and/or their coupling nut could fracture and break, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of its water supply lines, even when used for their intended purpose.

121.  Fluidmaster's negligent failure to warn or instruct Plaintiff and the Class was a substantial factor in causing the harm to Plaintiff and the Class, placing their

- 34 -

safety and personal property at risk.

## SIXTH CAUSE OF ACTION

### DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201, *ET SEQ.*
### AND FED. R. CIV. P. 57 ON BEHALF OF THE CLASS

122.   Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

123.   Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

124.   There is an actual controversy between Fluidmaster and Plaintiff concerning:

  a.   whether the water supply lines are defectively designed thus causing them to fail;

  b.   whether Fluidmaster knew or should have known of the defects;

  c.   whether Fluidmaster failed to warn against the potential unsuitability of its defectively designed water supply lines; and

  e.   whether Fluidmaster knowingly attempted to remediate the defects in its water supply lines before Plaintiff sustained any damage and without providing notice to Plaintiff and the Class about the defects.

125.   Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

126.   Despite the repeated failures of its water supply lines, Fluidmaster refuses to publicly acknowledge that these products have design flaws that cause them to fail. Fluidmaster attempted to remediate these design flaws without advising consumers of the defects.

127.   Accordingly, based on Fluidmaster's failure to act, Plaintiff seeks a declaration that the water supply lines are defective in their design, workmanship, material choices, and labeling, as alleged herein.  The defective nature of the water supply lines is material and requires disclosure to all persons who own them.

128.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective design and labeling of the water supply lines and the reasons for their repeated failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

### SEVENTH CAUSE OF ACTION

**FRAUD BY CONCEALMENT**
**ON BEHALF OF THE CLASS, OR ALTERNATIVELY**
**THE CALIFORNIA SUBCLASS**

129.   Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

130.   Fluidmaster had a duty to disclose the safety, quality, dependability, and reliability issues associated with its water supply lines because Fluidmaster

consistently marketed the water supply lines as safe, "heavy duty," durable, and "no burst."

131.  Once Fluidmaster made representations to the public about the safety, quality, dependability, and reliability of its water supply lines, Fluidmaster was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts that materially qualify those facts stated. A manufacturer that volunteers information about its product must be truthful, and the telling of a half-truth calculated to deceive is fraud.

132.  Upon information and belief, in or around 2003 when Fluidmaster changed the design of its NO-BURST Lines to incorporate inner tubing with a higher pressure rating, Fluidmaster concealed the defect of the earlier design from consumers including Plaintiff and the Class.

133.  When it remedied some of the defects of its water supply lines, Fluidmaster failed to publicize the fact that the NO-BURST water supply lines (which continued to be sold within its distribution networks) were known to burst. Fluidmaster also did not recall the defectively designed water supply lines, nor did Fluidmaster notify property owners that the defective water supply lines could spontaneously fail and should be replaced.

134.  In addition, Fluidmaster had a duty to disclose these omitted material facts because they were known and/or accessible only to Fluidmaster, which has

CLASS ACTION COMPLAINT
010418-11  839508 V1

superior knowledge and access to the facts, and Fluidmaster knew they were not known to or reasonably discoverable by Plaintiff and the Class.

135.   These omitted facts were material because they directly impact the safety, quality, and reliability of Fluidmaster's water supply lines. Whether a water supply line is a quality and reliable product that has been manufactured and designed according to industry standards are material facts for a reasonable consumer. Fluidmaster possessed exclusive knowledge of the defects and quality control issues rendering the water supply lines inherently more dangerous and less reliable than similar plumbing lines.

136.   Fluidmaster actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Class to purchase its water supply lines at a higher price for the NO-BURST water supply lines, which did not match the water supply lines' true value.

137.   Fluidmaster still has not made full and adequate disclosure and continues to defraud Plaintiff and the Class.

138.   Plaintiff and the Class were unaware of the omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's and the Class' actions were justified.

139.   Fluidmaster was in exclusive control of the material facts, and such facts were not known to Plaintiff or the Class.

140.  As a result of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage. Those Class members who want to rescind their purchase are entitled to restitution and consequential damages to their physical and personal property which arose from the sales transaction.

141.  Fluidmaster's acts were done maliciously, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being.

142.  Fluidmaster's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, and Plaintiff, individually and on behalf of the Class, reserves the right to assert a claim for punitive damages.

## EIGHTH CAUSE OF ACTION

### COMMON LAW BREACH OF EXPRESS WARRANTY ON BEHALF OF THE CLASS, OR ALTERNATIVELY THE CALIFORNIA SUBCLASS

143.  Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

144.  As fully pled above, Fluidmaster had knowledge of the defects to its water supply lines and that these lines pose a serious safety risk to consumers like Plaintiff and Class members.

145.  Fluidmaster expressly represented and warranted to Plaintiff and Class members by and through oral and written statements, descriptions, and affirmations of fact through its website, print advertising, marketing materials, and even the name "NO-BURST" prominently on many of its products, that the of its water supply lines

- 39 -

were safe and fit for their intended purposes.

146.    Fluidmaster expressly represented and warranted the quality of the water supply lines against defects in materials and workmanship for a period of either ten or five years (depending on the date of purchase of the water supply line), promising to "replace any part of this plumbing product which proves to be defective in workmanship or materials under normal use for ten [or alternately five] years from the date of purchase."

147.    Fluidmaster publicized these statements to consumers and was aware that consumers would reasonably rely on these warranties related to the quality and workmanship of the water supply lines using statements like "Fluidmaster is quick to market, quick to manufacture and quick to deliver with *unparalleled quality assurance*" (emphasis added).

148.    These express warranties were unavoidably material to Plaintiff and the Class members who would have chosen to purchase a different product if they had prior knowledge that a sudden failure of the water supply line would result in damage to the line itself as well as surrounding personal property of Plaintiff and the Class members.

149.    Plaintiff and the Class members reasonably relied on these express warranties when they chose to purchase Fluidmaster's water supply lines.

150.    At the time that Fluidmaster made these express warranties, it knew the use for which the water supply lines were intended, and Fluidmaster expressly

- 40 -

warranted that the lines were fit and safe for their intended purpose.

151. At the time that Fluidmaster made these express warranties, it knew of the latent defects in materials and workmanship inherent in the water supply lines, but continued to market the water supply lines by means of false and misleading information, including that the lines would last ten years (or alternately five years) without acknowledging or warning consumers of their actual design defects.

152. The water supply lines purchased by Plaintiff and the Class members did not conform to Fluidmaster's promises and descriptions in that:

a. The design of the Fluidmaster NO-BURST water supply lines are produced using a grade of stainless steel which is known to corrode and fracture, which is substantially certain to fail when used for its intended purpose due to Fluidmaster's choice of materials. The stainless steel braiding has an unreasonably high likelihood of corroding and failing when subjected to common household chemicals that are reasonably and foreseeably used and stored near the water supply lines.

b. The design of the Fluidmaster NO-BURST water supply lines include low pressure inner tubing which is substantially certain to fail when used for its intended purpose due to Fluidmaster's choice of materials. This inner tubing has an unreasonably high likelihood of bursting when the stainless steel braiding covering the tubing fails.

153. Plaintiff and the Class members have incurred damages including but not

- 41 -

limited to the destruction of their supply line, water damage to their homes, and destruction of their personal property, as described herein, as a direct and proximate result of Fluidmaster's breach of its express warranty.

## NINTH CAUSE OF ACTION

**BREACH OF EXPRESS WARRANTY
ON BEHALF OF THE CLASS, OR ALTERNATIVELY
THE CALIFORNIA SUBCLASS**

154.    Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

155.    Fluidmaster is a seller of the water supply lines.

156.    The water supply lines are goods.

157.    As set forth herein, Fluidmaster had knowledge of the defective design of its water supply lines and that they posed a serious risk to consumers including Plaintiff and the Class.

158.    Despite its knowledge, Fluidmaster expressly warranted in writing that it would replace defective parts. See Fluidmaster's Warranty located at http://www.fluidmaster.com/index.asp?bhcp=1.

159.    In selling its water supply lines, Fluidmaster expressly warranted in writing that it would repair and adjust to correct defects in materials and workmanship of any part supplied by Fluidmaster. In fact, Fluidmaster has not repaired or adjusted the water supply lines, and nor can it, given the fact that they are defective in their design.

- 42 -

160. These warranties were made not only in Fluidmaster's written agreement to customers but also in advertisements and in uniform statements provided by Fluidmaster.

161. These warranties, affirmations and promises were part of the basis of the bargain between Fluidmaster and Plaintiff and the Class, who relied on the existence of the express warranties.

162. By selling water supply lines containing the defects to consumers like Plaintiff and the Class after it had knowledge of the defects, Fluidmaster breached its express warranty to provide water supply lines that were free from defects.

163. Fluidmaster also breached its express warranty to repair and correct material defects or component malfunctions in its water supply lines when it failed to do so despite its knowledge of the defects and despite its knowledge of alternative designs and materials.

164. Further, any "repairs" offered by Fluidmaster do not and cannot remedy the problems with its water supply lines because of the design defects.

165. The warranty of repair to the water supply lines fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Class whole and because Fluidmaster has refused to provide the promised remedies within a reasonable time.

166. Also, as alleged herein, at the time Fluidmaster warranted and sold the water supply lines, it knew the supply lines did not conform to the warranties and were

- 43 -

inherently defective, and Fluidmaster wrongfully and fraudulently misrepresented and/or concealed material facts.

167. Accordingly, Plaintiff and the Class are not limited to the limited warranty of "repair" and Plaintiff and the Class seek all remedies allowed by law.

168. As detailed above, Fluidmaster was notified of Plaintiff's water supply lines defects but failed to provide defect-free supply lines to Plaintiff free of charge or to provide an adequate retrofit to remedy the defects.

169. As detailed above, Fluidmaster was provided with notice and has been on notice of the defects and of its breach of express written warranties through consumer warranty claims reporting problems with the water supply lines, customer complaints, and its own internal and external testing, but has failed to repair, replace or retrofit the water supply lines to ensure that they were free of materials defects or component malfunctions as Fluidmaster promised.

170. As a direct and proximate result of Fluidmaster's breach of its express warranties, Plaintiff and the Class have incurred damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ON BEHALF OF THE CLASS, OR ALTERNATIVELY THE CALIFORNIA SUBCLASS

171. Plaintiff repeats and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

- 44 -

172. Fluidmaster is a merchant with respect to the water supply lines.

173. The water supply lines are goods.

174. Fluidmaster's implied warranty of merchantability accompanied the sale of the water supply lines to Plaintiff and the Class.

175. Fluidmaster warranted that the water supply lines were fit for ordinary use.

176. The materials, design and repeated failure of the water supply lines made them defective and unfit for the ordinary purposes for which they are used. The water supply lines are not fit for ordinary use.

177. Any effort by Fluidmaster to disclaim or limit its responsibility for its defective water supply lines would be unconscionable under the circumstances, including because Fluidmaster knew its water supply lines were unfit for normal use. Through its conduct, Fluidmaster breached its implied warranty of merchantability and is liable to Plaintiff and the Class.

178. Plaintiff and the Class have provided notice to Fluidmaster regarding the problems they experienced with the water supply lines and, notwithstanding such notice, Fluidmaster failed and refused to remedy the problems. Further, Fluidmaster had actual knowledge of the defects alleged herein.

179. As a result of Fluidmaster's breach of the implied warranty of merchantability, Plaintiff and the Class members have incurred damages in an amount to be determined at trial.

- 45 -

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief, individually and on behalf of the Class:

a.      an Order certifying the Class and appointing Plaintiff as the Class Representative, and appointing Berger & Montague and Saltz, Mongeluzzi, Barrett & Bendesky as lead class counsel;

b.      an award for equitable and injunctive relief enjoining Fluidmaster from continuing to pursue the policies, acts and practices described in this Complaint;

c.      an award of damages and enhanced damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

d.      an award of pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.      an award of reasonable attorneys' fees and reimbursement of costs incurred by Plaintiff and Plaintiff's counsel in connection with this action; and

f.      such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims set forth above.

Dated: December 30, 2015

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Christopher R. Pitoun*
        Christopher R. Pitoun
Elaine T. Byszewski
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
elaine@hbsslaw.com
christopherp@hbsslaw.com

Anthony D. Shapiro
Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
tony@hbsslaw.com
Jeniphr@hbsslaw.com

Shanon J. Carson
Lawrence Deutsch
Glen L. Abramson
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
ldeutsch@bm.net
gabramson@bm.net

Simon Bahne Paris
Patrick Howard
Charles J. Kocher

- 47 -

1
2   **SALTZ, MONGELUZZI, BARRETT &
    BENDESKY, P.C.**
3   One Liberty Place, 52nd Floor
    1650 Market Street
4   Philadelphia, PA 19103
    (215) 575-3986
5   sparis@smbb.com
    phoward@smbb.com
6   ckocher@smbb.com
7
8   Edward A. Wallace
    Amy E. Keller
9   **WEXLER  WALLACE LLP**
10  55 West Monroe Street, Suite 3300
    Chicago, Illinois 60603
11  312-346-2222 Telephone
    312-346-0022 Facsimile
12  eaw@wexlerwallace.com
    aek@wexlerwallace.com
13
14
15  Gregory F. Coleman
    Lisa A. White
16  **GREG COLEMAN LAW PC**
    First Tennessee Plaza
17  800 S. Gay Street, Suite 1100
    Knoxville, TN  37929
18  T: (865) 247-0080
    F: (865) 522-0049
19  greg@gregcolemanlaw.com
    lisa@gregcolemanlaw.com
20
21
22  Daniel J. Kurowski
    **HAGENS BERMAN SOBOL SHAPIRO
23  LLP**
    1144 W. Lake Street
24  Suite 400
    Oak Park, IL 60301
25  Tel. (708) 628-4949
    Fax. (708) 628-4950
26  dank@hbsslaw.com
27
28

CLASS ACTION COMPLAINT
010418-11  839508 V1

Joseph J. Tabacco, Jr. (SBN 75484)
Todd. A. Seaver (SBN 271067)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA  94111
Telephone: (415) 433-3200
Facsimile:  (415) 433-6282
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com

Daniel E. Gustafson
Amanda M. Williams
Raina C. Borrelli
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza120 South Sixth Street,
Suite 2600
Minneapolis, MN 55402
Tel:   (612) 333-8844
Fax:   (612) 339-6622
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
rborrelli@gustafsongluek.com

Donald L. Perelman
Gerard A. Dever
Ria C. Momblanco
**FINE, KAPLAN AND BLACK, P.C.**
One South Broad St., 23rd Floor
Philadelphia, PA  19107
Telephone: (215) 567-6565
Fax: (215) 568-5872
dperelman@finekaplan.com
gdever@finekaplan.com
rmomblanco@finekaplan.com

- 49 -